WRight, J.,
delivered tbe opinion of the Court.
Smith sued Drennon, by warrant before a Justice of the Peace, upon a note under seal, for thirty-five dollars, executed by him, on the 17th of December, 1855, payable to W. M. Carpenter, one day after date, and by him endorsed to the plaintiff, Smith. The case was taken to the Circuit Court by appeal, and upon the trial the defendant proved by one Nelson, that at the date of the note he was a Justice of the Peace of Wilson county, that Carpenter, to whom the note was payable, was a constable — that Carpenter came to his house and got some executions against Drennon, in favor of Witty— that at the time he procured the executions, he asked the witness if it would he any harm for him to make an arrangement with Drennon, by which Drennon should pay him for holding up the executions until he returned from a trip down the river with some timber. He told Carpenter he thought not. The defendant then offered to prove by this witness, that a day or two afterwards, Carpenter told him that he had taken Dren-non’s note for $30, or $35, and he had agreed to wait until he returned. This was objected to, and the objection sustained by the Coui't.
The defendant then proved by W. G. Robertson that he made a settlement between Drennon and Carpenter after Drennon’s return from his trip down the river, and that the executions in favor of Witty were settled and paid in that settlement, and that the note in controversy had not then been transferred. And he then offered to prove by this witness, that at the time of the settlement the note was spoken of, and it was agreed between Drennon and Carpenter, that it had been given in consideration that Carpenter would indulge Drennon on the executions in favor of Witty; but this was also objected to, and the objection sustained by the Court.
In these rulings of the Circuit Judge there is error. It is not contended that the proof offered, if believed, would not constitute a valid defence to the note, as between the maker and payee. And it cannot be maintained here, that the plain *391 tiff occupies any higher ground than does Carpenter, from whom he acquired the note — he having taken the same after it was past due and dishonored, and the declarations of the endorser having been made- while the interest was in him. In such a ease they are admissible evidence for the defendant, and derive their value and legal force from the relation of the party making them to the property in question, and are taken as parts of the res gestee, and may be proved by any competent witness who heard them, without calling the party by whom they were made, and whether he be competent or not. The question is, whether he made the statement, and not merely whether the fact is as he admitted it to be. Its truth, where the admission is not conclusive, (and it seldom is so,) may be controverted by other testimony; even by calling the party himself, when competent; but it is not necessary to produce him, his declarations, when admissible at all, being admissible as original evidence, and not as hearsay. Thus, the admissions, or declarations, made by the assignor of a personal contract, or chattel, previous to the assignment, while he remains the sole proprietor, and where the assignee must recover through the title of the assignor, and succeeds only to that title as it stood at the time of the transfer, are admissible evidence against the assignee. In such a case, he is bound by the previous admissions of the assignor, in disparagement of his own apparent title. But this is true only where there is an identity of interest between the assignor and assignee; and such identity is deemed to exist, not only where the latter is expressly the mere agent and representative of the former, but also where the assignee has acquired a title with actual notice of the true state of that of the assignor, as qualified by the admissions in question, or where he has purchased a demand already stale, or otherwise infected with circumstances of suspicion. Thus, also, the declarations of a former holder of a promissory note, negotiated before it was over-due, showing that it was given without consideration, though made while he held the note, are not admissible against the endorsee; for the right of a person, holding by a good title, is not to be cut *392 down by the acknowledgment of a former holder, that he had no title. But in an action by the endorsee of a bill, or note, dishonored before it was negotiated, the declarations of the endorser, made while the interest was in him, are admissible in-evidence for the defendant. 1 Greenl. Ev., secs. 171, 189, 190 and 191.
But it is argued that it is a rule of law, founded on public policy, that no party who has signed or endorsed a negotiable paper, shall ever be permitted, by his testimony, to invalidate it, and'that, a fortiori, it must be so as to his declarations. It is sufficient for us to say, the established rule is otherwise in our State. Stump v. Napier, 2 Yer., 35, 50.
Reverse the judgment, and remand the case for another trial.